**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

---

| | |
|---|---|
| MICHAEL WHITE and MARSHA WHITE, | **COMPLAINT** |
| Plaintiffs, | |
| v. | |
| SPRINGTREE REHABILITATION & HEATH CARE CENTER, LLC | **JURY TRIAL DEMANDED** |
| Defendant. | |

---

Plaintiffs, Michael White and Marsha White, by and through their undersigned attorneys, hereby sue Defendant, Springtree Rehabilitation & Health Care Center, LLC, and allege as follows:

## PRELIMINARY STATEMENT

1. Plaintiffs Michael White and Marsha White are profoundly deaf individuals who communicate primarily in American Sign Language (ASL), which is their expressed, preferred, and most effective means of communication. While Plaintiffs were at Defendant's nursing home facility visiting their elderly parents, Plaintiffs repeatedly requested an ASL interpreter on several occasions to facilitate effective communication between themselves and Defendant's nursing home staff. Despite these requests, Defendant, through the actions of its nursing home staff, repeatedly and unlawfully denied Plaintiffs the auxiliary aids and services they needed.

2. Due to physical, environmental, and pedagogical factors, many deaf individuals, including Plaintiffs, have difficulty acquiring English. Indeed, the median reading level of deaf high school graduates is fourth grade. This is because English is generally a second language

(after ASL or another form of sign language) for individuals who are born deaf or become deaf before acquiring language. In addition, many deaf people acquire English as their second language later in life, and well past the critical developmental period of language acquisition. Despite this, Defendant often forced Plaintiffs to communicate in a medical setting using written notes in English, instead of properly accommodating their disability through qualified ASL interpreters.

3. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30%. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, for the reasons set forth above. Despite this, Defendant often forced Plaintiffs to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating their disability through qualified ASL interpreters.

4. Defendant's repeated wrongful and intentional discrimination against Plaintiffs on the basis of their disability is reflected by the Defendant's failure to train employees and promulgate policies of non-discrimination against deaf individuals. Despite Plaintiffs' repeated requests for an interpreter, Defendant treated Plaintiffs with deliberate indifference due to their disability. Defendant's denial of effective communication during Plaintiffs' nursing home visits caused them significant suffering, humiliation, and emotional distress.

5. Plaintiffs bring this lawsuit to seek declaratory relief; compensatory damages; and

attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

## THE PARTIES

6. Plaintiffs MICHAEL WHITE and MARSHA WHITE bring this action. Plaintiffs are siblings who reside at 772 Rossville Avenue, Staten Island, New York 10309. Both Plaintiffs are profoundly deaf and communicate primarily in ASL. Both Plaintiffs are substantially limited in the major life activity of hearing and are qualified persons with a disability within the meaning of the Rehabilitation Act.

7. Defendant, SPRINGTREE REHABILITATION AND HEALTH CARE CENTER, LLC (hereinafter Springtree), is a nursing home facility located in Florida and an employer engaged in the practice of healthcare, with a principal place of business located at 4251 Springtree Drive, Sunrise, Florida 33351.

8. Springtree is a recipient of federal financial assistance, thus making it subject to the requirements of the Rehabilitation Act.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiffs' claims arising under federal law.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant resides within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

11. Plaintiffs Michael and Marsha White are individuals who are profoundly deaf.

12. On March 13, 2015 Plaintiffs drove to Florida to visit their elderly parents, where

they lived at the time.

13. Plaintiffs' father was in poor health, and his wife, Plaintiffs' mother, had been recently admitted to Springtree due to high blood pressure.

14. When Plaintiffs arrived at Springtree, they repeatedly requested an ASL interpreter to communicate with the nursing home staff regarding their parents' health and well-being.

15. Vae Calis, a staff member of Defendant's nursing home, told Plaintiffs that an interpreter would not be provided.

16. On March 16, 2015, Plaintiffs reiterated to Defendant that, since they are both deaf, they required an interpreter to communicate with nursing home staff in order to understand any care or medications that their mother would be receiving.

17. On March 17, 2015, Plaintiffs' mother had a scheduled meeting with Defendant's staff members Sandra Austin-White and Veronica Logan.

18. Plaintiffs again asked for an interpreter because they wanted to understand any conversations between the nursing home staff and their mother.

19. Defendant's staff stated that an interpreter would not be provided, but the nursing home staff would write down information to the Plaintiffs during the conversation.

20. Defendant also stated that Plaintiffs' father would be at the meeting, and since he is a hearing individual, with power of attorney over his wife, he would be able to understand the conversation and interpret for Plaintiffs.

21. Plaintiffs' father is an elderly man with health concerns of his own, as well as memory loss.

22. Plaintiffs' father is also not a qualified interpreter, and would not be able to

effectively interpret the conversation between his wife and hospital staff.

23. Defendant stated that its staff would write down a list of medications that Plaintiffs' mother was being prescribed.

24. Since there was no interpreter provided, Plaintiffs were not able to understand the purpose or side effects of medications provided to their mother.

25. During the March 17, 2015 meeting, a nurse from Defendant's facility handed Plaintiff Marsha White a note which stated [regarding her mother]: "Mrs. Fertik is walking 100 feet with therapy. Needs to watch safety because of dizziness. Does not call for help, walks to bathroom on her own."

26. Plaintiffs' father became very upset that his children could not understand Defendant's staff regarding their mother's care, causing him to become agitated, overwhelmed, and frustrated.

27. Defendant told Plaintiffs that New York has stricter rules than Florida requiring the availability of interpreters in nursing homes, and that there is no requirement for interpreters to be made available for nursing home visitors.

28. On March 24, 2015, Plaintiffs' mother had a resident care treatment meeting with Defendant's staff members Darla Balderrama, and Jennifer Hanes, among others.

29. Darla Balderrama is employed by Defendant as Activities Director and Volunteer Coordinator.

30. Jennifer Hanes is employed by Defendant as Assistant Director of Nurses.

31. Plaintiff Marsha White requested an interpreter at this meeting because it would concern important medical information regarding her mother's health and welfare.

32. Defendant told Plaintiffs that an interpreter would not be provided, and advised

that if she really wanted one, she would need to use Google to find one locally.

33. On April 4, 2015, Plaintiffs' mother was discharged from Springtree.

34. Plaintiffs requested a meeting with a doctor before their mother was discharged.

35. Plaintiffs were told that the social worker asked Sandra Austin-White for an interpreter for this meeting, but none would be provided.

36. Immediately following discharge, Plaintiffs drove back to New York with their elderly parents.

37. Plaintiffs' mother and father currently live with them in Staten Island, New York.

38. Defendant routinely failed to provide Plaintiffs with adequate auxiliary aids and services to enable them to effectively communicate with Defendant's staff, despite Plaintiffs' requests for an onsite ASL interpreter.

39. As a result of Defendant's discriminatory conduct, Plaintiffs were denied the same opportunities that are readily and routinely provided to companions to participate in the care of family members.

40. Defendants' wrongful and intentional discrimination against Plaintiffs on the basis of disability is reflected by the Defendant's failure to train employees and promulgate policies of non-discrimination against deaf individuals.

41. Defendant discriminated against Plaintiffs with deliberate indifference to their civil rights and communication needs, causing Plaintiffs to endure humiliation, fear, anxiety, and emotional distress.

**COUNT 1: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

42. Plaintiffs repeat and reallege all preceding paragraphs in support of this claim.

43. At all times relevant to this action, Section 504 of the Rehabilitation Act, 29

U.S.C. § 794, was in full force and effect and applied to the Defendant's conduct.

44. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, were in full force and effect and applied to the Defendant's conduct.

45. At all times relevant to this action, Plaintiffs have had substantial limitations to the major life activities of hearing and speaking, and have been individuals with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

46. At all times relevant to this action, Defendant received federal financial assistance, including Medicaid and/or Medicare reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant's rehabilitation care facility is a program or activity receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

47. Pursuant to Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

48. Pursuant to 45 C.F.R. § 84.52(a), "[i]n providing health, welfare, or other social services or benefits, a recipient may not, on the basis of handicap: (1) Deny a qualified handicapped person these benefits or services; (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered nonhandicapped persons; (3) Provide a qualified handicapped person with benefits or services that are not as effective . . . as the benefits or services provided to others; (4) Provide benefits or services in a manner that limits or has the effect of limiting the participation of qualified handicapped persons; or (5) Provide different or separate benefits or services to handicapped persons except where

necessary to provide qualified handicapped persons with benefits and services that are as effective as those provided to others."

49. Pursuant to 45 C.F.R. § 84.52(d), "A recipient to which this subpart applies that employs fifteen or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question . . . For the purpose of this paragraph, auxiliary aids may include brailled and taped material, interpreters, and other aids for persons with impaired hearing or vision."

50. The Rehabilitation extends relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

51. Defendant repeatedly discriminated against Plaintiffs, solely on the basis of their disability, by denying them meaningful access to the services, programs, and benefits the Defendant offers to other individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the above-cited implementing regulations.

52. Plaintiffs are therefore entitled to seek and recover compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

53. Plaintiffs are further entitled to an award of attorney's fees, costs, and disbursements pursuant to the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendant's policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Section 504 of the Rehabilitation Act;

b. Award to Plaintiff:

  i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act;

  ii. Reasonable costs and attorneys' fees pursuant to Section 504 of the Rehabilitation Act;

  iii. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

  iv. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable, and for all of the requested relief that a jury may award.

Dated:      March 30, 2016         Respectfully Submitted By:

GLAZER & ASSOCIATES, P.A.
One Emerald Place
3113 Stirling Rd Suite 201
Fort Lauderdale, Florida 33312
Telephone:   (954) 983-1112
Facsimile:   (954) 333-3983

By:   /s/ Paul Kim
PAUL KIM FBN 37111
paul@condo-laws.com
ERIC GLAZER FBN 946494
eric@condo-laws.com